NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200116-U

NO. 4-20-0116

IN THE APPELLATE COURT

FILED
May 5, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF KENNETH E. SEIDLER | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
| Petitioner-Appellee, | ) | No. 06MR145 |
| v. | ) | |
| Kenneth E. Seidler, | ) | Honorable |
| Respondent-Appellant). | ) | John W. Belz, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding respondent failed to produce a sufficient record to support his claim the circuit court abused its discretion in denying his motion for independent examination.

¶ 2    Following a September 2008 trial, a jury determined respondent, Kenneth E. Seidler, was a sexually violent person as defined by the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 to 99 (West 2008)), and he was later committed to the custody of the Illinois Department of Human Services (DHS) until he is no longer sexually violent. In October 2019, based on a statutorily mandated annual reexamination, the State filed a motion for a finding of no probable cause to believe respondent was no longer a sexually violent person. In December 2019, respondent moved for the appointment of an independent examiner to evaluate him. Following a January 2020 hearing, the trial court denied respondent's motion for an

independent examiner and granted the State's motion for a finding of no probable cause. On appeal, respondent contends he provided a proper basis to rebut the 126-month reexamination report, which entitled him to an independent examiner and, therefore, the trial court abused its discretion when it denied his motion for an independent examiner. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        This case represents respondent's fifth appeal before this court on issues governed by the Act. Due to the history of this case and the parties' familiarity with the issues presented, we only reiterate the facts necessary as previously provided in *In re Commitment of Seidler*, 2016 IL App (4th) 150382-U.

¶ 5        In 1984, respondent was convicted of rape for a 1983 offense involving an 8-year-old girl, her 14-year-old sister, and their mother. Respondent entered the basement of the victims' home and grabbed the youngest daughter. He instructed the girl to call for her mother. The victim called for her mother, but her older sister appeared instead. Respondent told the older sibling to call for her mother. After the mother descended to the basement, respondent blindfolded and tied up all three victims. Respondent then raped the mother and attempted to rape the oldest daughter. One of the girls reported respondent was armed with a pocketknife.

¶ 6        Following his conviction, the trial court sentenced respondent to 40 years' imprisonment, with 3 years' mandatory supervised release (MSR). While on MSR, respondent was electronically monitored and authorized to travel between his home and job. In July 2005, authorities discovered respondent engaged in unauthorized movement when he was found at a wildlife sanctuary. The officers who located respondent searched him and found a knife and rope in his pockets. Respondent admitted to the officers his "old urges" were returning. Respondent's MSR was revoked, and he was returned to prison.

¶ 7        In March 2006, the State filed a petition to have respondent committed as a sexually violent person. In September 2008, a jury determined respondent was sexually violent, and the trial court ordered DHS to take custody and care of respondent for treatment. Respondent appealed, and this court affirmed respondent's commitment. *People v. Seidler*, No. 4-09-0464 (Oct. 7, 2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8                              A. Reexamination Reports Using DSM-IV

¶ 9        Over the years, Dr. Steven Gaskell, a clinical and forensic psychologist, submitted periodic reexamination reports on respondent's mental condition pursuant to section 55 of the Act. See 725 ILCS 207/55 (West 2008) (requiring reevaluation after the first six months of commitment, followed by yearly reevaluations for as long as the respondent remains committed). Gaskell's reexamination reports sought to determine whether respondent had made sufficient progress to be conditionally released or discharged from DHS's custody.

¶ 10        In preparing the reports, Gaskell reviewed more than 25 documents, including reports from two other psychologists. The reports set forth respondent's relevant history, including his criminal, sexual, and treatment history. In his 6-, 18-, 30-, and 42-month reexamination reposts, Gaskell diagnosed respondent with (1) paraphilia not otherwise specified (paraphilia NOS), (2) alcohol and cannabis abuse by history in a controlled environment, and (3) antisocial personality disorder. Gaskell relied on the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision DSM-IV-TR (2000) (DSM-IV-TR) and provided the following required criteria for respondent's paraphilia disorder diagnosis:

> "[I]ntense, recurrent sexually arousing fantasies, sexual urges or behaviors
> generally involving nonhuman objects, the suffering or humiliation of oneself or

one's partner, or children or other nonconsenting persons that have existed for at least six months. Additionally, the individual must have acted on these urges or the urges themselves cause interpersonal difficulties."

Gaskell further noted paraphilia NOS "is used for coding paraphilias that do not meet the criteria for any of the specific paraphilias." In support of diagnosing respondent with paraphilia NOS, Gaskell explained,

"[Respondent] has repeatedly been accused of using physical force to coerce non-consenting individuals into engaging in sexual behavior with him. He was charged [with] sexually assaulting or attempted [*sic*] to sexually assault at least 3 females while in possession of a knife, and acknowledged his '*old urges*' to a Sheriff's Deputy when questioned regarding an incident on July 21, 2005[,] that ended up resulting in a parole violation (where he was found in a park with two pieces of rope). He was convicted of [r]ape in 1984 and he spent several years in prison for his behavior." (Emphasis in original.)

¶ 11        Gaskell further summarized respondent's treatment progress as "limited" and noted "he has not participated in any sex offense specific treatment since his admission to [DHS]."

¶ 12        As to the issue of respondent's propensity to engage in future acts of sexual violence, Gaskell used an "adjusted actuarial" approach to determine respondent's level of risk. The "[a]djusted actuarial assessment begins with actuarial instruments, which may then be adjusted based upon additional potentially important factors like stated intent to re-offend, debilitating health problems, and deviant sexual arousal." For the 6-, 18-, and 30-month reevaluations, respondent scored in the moderate-high risk category on the Static-99R and the

highest risk category on the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R). For the 42-month reevaluation, respondent scored in the moderate-low risk category on the Static-99R and the low-moderate risk category on the Static-2002R. In each of Gaskell's reports, he opined the Static-99R instrument underestimated respondent's level of risk. He explained:

> "[E]ven though [respondent] was held, given his *Miranda* rights [(see *Miranda v. Arizona*, 384 U.S. 436 (1966))], questioned by police, participated in a live line-up at the jail, and he left his motorcycle with the police for evidence, he was not arrested, thus, he did not qualify for a prior sex offense according to the Static-99R Manual. This, along with his high risk behavior at the park while on parole, indicated that this instrument underestimates his level of risk."

¶ 13    Since the actuarial scores are a starting point, Gaskell adjusted respondent's risk for future sexual offenses based on certain risk factors. In the 6-, 18-, 30- and 42-month reexamination reports, Gaskell identified the following risk factors applicable to respondent: (1) his penile-plethysmography assessment showed deviant sexual preferences; (2) any deviant sexual interest; (3) impulsiveness, recklessness; (4) any substance abuse; (5) noncompliance with supervision; (6) sexual interests in children; (7) antisocial personality disorder; (8) employment instability; (9) intoxicated during offense; and (10) "PCL-R (31 [Act] Evaluation)."

¶ 14                    B. Reexamination Reports Using DSM-5

¶ 15    In October 2013, Gaskell prepared a 54-month reexamination report. The report noted respondent was 61 years old and this was his fifth reexamination. Gaskell used the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, DSM-5 (2013) (DSM-5) to diagnose respondent. Gaskell noted the DSM-5 was the latest edition of the standard reference for clinical practice in the mental health field and offered

the best available description of how mental disorders are expressed. Consistent with previous reexamination reports, Gaskell diagnosed respondent with alcohol and cannabis abuse by history in a controlled environment, antisocial personality disorder, and "other specified paraphilic disorder, sexually attracted to non-consenting persons." Gaskell explained "other specified paraphilic disorder, sexually attracted to non-consenting person," was formerly called "paraphilia not otherwise specified" under the DSM-IV-TR but there was no change in the diagnostic criteria.

¶ 16        In the 66-, 78-, 90-, 102- and 114-month reexamination reports, Gaskell maintained respondent met the diagnostic criteria for "other specified paraphilic disorder, sexually attracted to non-consenting persons," alcohol and cannabis abuse by history in a controlled environment, and antisocial personality disorder.

¶ 17        Gaskell's reports also considered whether protective factors such as treatment progress, age, and health status applied to respondent. Treatment progress did not apply as a protective factor because respondent had not participated in sex-offense-specific treatment while at DHS. Similarly, the "health" factor did not apply because respondent did not have any medical condition that would reduce his risk of reoffending. However, Gaskell found "[s]ome age-based reduction of risk is warranted and was reflected on the actuarial instruments." Gaskell concluded "to a reasonable degree of psychological certainty that it [was] substantially probable that [respondent] will engage in future acts of sexual violence."

¶ 18        As to the issue of respondent's propensity to engage in future sexual violence, in the 54-, 66-, 78-, and 90-month reports respondent again scored in the moderate-low risk category with a score of two on the Static-99R and the low-moderate risk category with a score of four on the Static-2002R. On the 102- and 114- month reports, defendant's scores remained a

two on the Static-99R and a four on the Static-2002R, but the risk categories were both labeled as "[a]verage risk[.]" As Gaskell explained in prior reports, the Static-99R underestimates respondent's level of risk. Gaskell identified the same 10 risk factors applicable to respondent for future sexual offending in all reports.

¶ 19    Gaskell again determined one protective factor applied to respondent, his age. Gaskell's reports stated, "[s]ome age-based reduction of risk is warranted and was reflected on the actuarial instruments." Gaskell concluded it was substantially probable respondent will engage in future acts of sexual violence and it was "crucial that he remain civilly committed as a Sexually Violent Person in a secure setting to guarantee the security and treatment involvement necessary to reduce his level of risk."

¶ 20    C. The 126-Month Reexamination Report

¶ 21    Gaskell made no notable additions or alterations to his 126-month reexamination report. Gaskell maintained respondent met the diagnostic criteria for "other specified paraphilic disorder, sexually attracted to non-consenting persons," alcohol and cannabis abuse by history in a controlled environment, and antisocial personality disorder. Additionally, respondent's scores on the Static-99R and Static-2002R indicated his risk remained average.

¶ 22    Gaskell noted respondent continued to decline participation in any sex-offense-specific treatment since being admitted to DHS and declined to participate in an interview for reexamination. Gaskell reiterated respondent's current health status did not warrant a reduction of risk and his age was already fully taken into account by the actuarial instruments. Gaskell recommended respondent should (1) continue to be found a sexually violent person under the Act, (2) remain committed at DHS, and (3) become involved in sex-offender-specific treatment so he can make the significant progress necessary to be conditionally released into the

community. On October 28, 2019, the State filed a motion for a finding of no probable cause based upon Gaskell's 126-month reexamination report.

¶ 23        On December 26, 2019, respondent filed a motion for the appointment of an independent examiner to examine him pursuant to section 55(a) of the Act (725 ILCS 207/55(a) (West 2018)). Respondent argued he provided a basis to rebut Gaskell's reexamination report because Gaskell (1) relied upon the Static-99R and Static-2002R to find respondent continues to be a sexually violent person but did not use those instruments when they did not support continued detention; (2) changed respondent's diagnosis from "Paraphilia Not Otherwise Specified, Sexually Attracted to Non-Consenting Persons" to "Other Specified Paraphilia Disorder, Sexually Attracted to Non-Consenting Persons" pursuant to the DSM-5; (3) admitted "clinical judgment on its own uses untested assumption about what factors predict risk and what combination of risk factors has been demonstrated to best assess risk"; (4) discredited "objective measures by subjective means"; and (5) was biased against respondent.

¶ 24        On January 29, 2020, the trial court held a hearing on respondent's motion for an independent examiner and the State's motion for a finding of no probable cause. Following arguments, the court denied respondent's motion for an independent examiner and, further, found no probable cause shown to believe respondent was no longer a sexually violent person.

¶ 25        This appeal followed.

¶ 26                                II. ANALYSIS

¶ 27        On appeal, respondent asserts the trial court erred by denying his request for the appointment of an independent examiner pursuant to section 55(a) of the Act (725 ILCS 207/55(a) (West 2018)). Specifically, respondent argues (1) he scored in the average risk recidivism categories on the Static-99R and Static-2002R; (2) the report failed to account for his

age; and (3) "Coercive Paraphilia" was rejected as a mental disorder under the DSM-5. We review the denial of a motion for the appointment of an independent evaluator for abuse of discretion. *People v. Botruff*, 212 Ill. 2d 166, 176, 817 N.E.2d 463, 469 (2004). The State contends defendant forfeited these arguments by not providing an adequate record on appeal.

¶ 28 The Illinois Supreme Court "has long held that in order to support a claim of error on appeal the appellant has the burden to present a sufficiently complete record." *Webster v. Hartman*, 195 Ill. 2d 426, 432, 749 N.E.2d 958, 962 (2001). If the issue on appeal "relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding." *Id.* In the absence of such a record, the reviewing court will presume the trial court's order conformed to the law and had a sufficient factual basis. *Id.* "Any doubts which arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 459 N.E.2d 958, 959 (1984).

¶ 29 We are unable to find the trial court erred by denying respondent's motion for an independent examination because respondent failed to produce a sufficiently complete record to support his claim. On January 29, 2020, the court held a hearing on respondent's motion for an independent examiner and the State's motion for a finding of no probable cause. Following arguments, the trial court denied respondent's motion for an independent examiner and granted the State's motion, finding no probable cause shown to believe respondent was no longer a sexually violent person. The record before us does not include a transcript of the hearing, a bystander's report, or an agreed statement of facts. See Ill. S. Ct. R. 323(c) (eff. July 1, 2017). We have nothing to review pertaining to respondent's motion. Without a record to support the contrary, we must assume the court considered the particular facts and circumstances of the motion and made its decision in accordance with the law. See *Webster*, 195 Ill. 2d at 432.

¶ 30    Moreover, we note respondent in the instant appeal has made substantially identical arguments in his prior appeals, which this court has rejected. *Seidler*, 2016 IL App (4th) 150382-U; see also *In re Commitment of Seidler*, 2015 IL App (4th) 140214-U. In 2016, this court determined Gaskell's use of the Static-99R and Static-2002R did not provide a basis for respondent to rebut the reexamination report. Further, we found the reexamination report noted respondent's age warranted a reduction of risk and such reduction was reflected on the actuarial measurements. Thus, respondent's age was not a basis to rebut the report. In addition, we found respondent was not diagnosed with paraphilic coercive disorder and, as it is a different disorder than other specified paraphilic disorder (sexually attracted to non-consenting persons), we failed to see how any analogy to paraphilic coercive disorder was relevant. *Seidler*, 2016 IL App (4th) 150382-U, ¶¶ 34-38. We conclude respondent's arguments do not provide a basis to rebut the reexamination report.

¶ 31                                III. CONCLUSION

¶ 32    For the reasons stated, we affirm the trial court's judgment.

¶ 33    Affirmed.